Good morning, Your Honor. Joshua Morikowicz on behalf of the Dorrohs and Brad Elley on behalf of the Warrens. I'd like to reserve five minutes for rebuttal. Are you the only one who will be arguing? Yes, Your Honor. There's a single issue that resolves this case. The question is, when Deerbrook was presented with an opportunity to settle this case within the policy limits, was it reasonable for them to require the consent of the employer where the employer had paid no money to date? It was unreasonable to require that employer's consent, because Deerbrook could not Did they really require consent, or was it consent or proof that there was not going to be any payment from the employer? No. It was consent. They said, we know the employer has paid zero. That was agreed in November. But they asked for proof of that. I thought there actually was some uncertainty. They said, can you show us the denial, and then there was no No. They did, early in the process, said, can you send us the letter. In November 20th, and this is all in the record, November 20th, there was a phone call between the attorneys for the Dorrohs and the attorney for Mr. Kennedy, the adjuster. And there it was discussed that the employer had denied the claim. And Mr. Kennedy said, I understand that. It doesn't matter. We must put the employer's consent. It doesn't matter whether they've paid zero. There must be their consent. And at his deposition, he again said, I would not have sent the money if they sent me the letter. The letter was something that was only brought up as a reason to not do it nine years after the events. Is it your position that there was no potential liability in terms of an employer lien? If they had accepted the settlement, the lien would have been capped at zero dollars, and that's expressly, that's, the statute says it expressly. Section 3859B was added in 1971. Prior to that date, the statute said, no employee can ever settle without the employer's consent. There had been a number of workarounds people had tried to do to be able to settle without the employer's consent. In 1970, the California Supreme Court decided Brown v. Superior Court and said, no, these workarounds are not, they don't work. The language is unambiguous. You need the employer's consent. The legislature then added 3859B to reverse the unfair, and Brown recognized that it's unfair. I'm looking at the text of subsection B, so help me understand how it supports your position. Sure. So the first question is, could the Doros have settled without the consent of the employer? The first sentence in 3859B, notwithstanding anything to the contrary contained in this chapter, and the contrary thing is section A that says you always need employer's consent. So notwithstanding section A, an employee may settle and release any claim he may have against a third party without the consent of the employer. But that doesn't say the insurer has to, right? How do we know that the insurer has to do that without some release from the employer, that the employer isn't going to go after that insurer again for money to compensate them for workers' compensation? Because the statute gives the Doros the ability to release except for monies paid as of that date. And that's what the statute – remember, so it says we may settle and we may release the claim. The second sentence says such settlement or release shall be subject. So there is a limitation on the ability to release.  We cannot release the third party from the claim of the employer for money that was paid as of the time of the settlement. And that's your – No, go ahead. No. But if the position of the Doros was that workers' compensation had been denied, why was proof of that denial not rendered? Well, because they had said they don't need – again, what would have actually happened is Deerbrook said we don't care. They never – No, but my question was specific to if the workers' compensation had been denied, then that would unequivocally establish a zero liability. So why were the – why would the insurance – why were they reluctant to give the denial letter? I mean, I don't get that. There was no reluctance. And that's the case. But why wasn't it produced? Because Deerbrook said we don't care. We agree. But did it exist? Did the denial exist? The denial letter did exist. But it was temporary, right? Ultimately, a lot of workers' compensation was paid, right? It was. But the idea is had they accepted a settlement when we made it, the employer, once they were held liable, their sole remedy is to do – use a credit. But what is – what in the statute says that's the sole remedy? So it says it's a remedy, but how do we know it's the only remedy? How do we know the employer can't go after the insurer of the person who caused the accident? Because there's a release. And that's the key. The employee can give the release. The release is subject. It says it in 3859. But who's released? The employee can release the employer and can release the third party for everything, all claims arising out of the accident except money that has already been paid. But that doesn't bind anyone else. That's the difficulty. The release is only for the employee. No. The release is for the employee and the employer for future benefits. How do we know that? Because it says so in Section B. Okay. Where? It says, again, the employee may settle and release any claim. But that release is subject to the employer being able to pursue for past benefits. And these also – Against the employee. Right. And so it doesn't say anything about the employer going after the person who caused the accident's insurer. No, this is absolutely as to the third party. And there's four cases. There are four cases that expressly hold the lien rights are limited to what has been paid as of the time of the settlement or judgment. I have four cases on point that directly state exactly what I'm saying, that the limit is only to past. We have Graham v. Workers' Compensation Appeals Board, 210 Calap 3rd, 499. And it explains that there's credit and lien provisions. And it says, the reimbursement provisions provide several methods for the employer or its carrier to recover from a third-party tort fees or workers' compensation benefits. Was this case in your brief? It was. Which the employer has already paid to the injured employee. The right for the employer to sue is limited to what has already been paid. The credit provisions allow the employer to discontinue workers' comp benefits payment until the amount of the benefits exceeds – What page are you reading from, counsel? Of my brief or of Graham. Of the case. This is on 503 to 504. Okay. So they only can go for what's already been paid. In Nelson v. Workmen's Compensation Benefits, thus – this is at page 478 – thus, where particular workers' comp benefits have not been awarded by the board by the time the third-party tort fees or satisfies the injured employee's judgment against them, but an award of such benefits is later sought, sections 3858 and 3861 permit the employer to achieve the same result. Permit. Counsel, here's the difficulty I'm having with your argument, is that you are presenting this as the only way that the employer can resolve the lien issue. And these cases and the statute seem to give the import that this is a permissible way to do it, but the employer is not obligated to do it that way. No, they – So tell me what language in Graham you're relying upon to support the proposition that the employer is obligated to proceed in this manner. They – Give me the language in the case that says the employer is obligated to proceed in this way and this way alone. You know, I – it doesn't use the word obligated, but it does talk about credit, reimburse – the lien right. It explains the statutory scheme. Okay. Here – I'll go through the statutory scheme. 3850 – We understand the statutory scheme. What we don't – I do. What we don't understand is your – well, I don't understand. I won't speak for my colleagues. What I don't understand is your argument that the employer is obligated and is limited to proceeding in only the way that your clients proposed. County of San Diego requires that interpretation, and that's what's important. And that – and the defendant cannot address County of San Diego. Where in County of San Diego does it say the employer is obligated? Well, what County of San Diego does is it talks about what was the intent of this amendment. And the intent of the amendment was to make the employee free from the employer's veto in all cases. Okay. And the only way that can be done – and the statute 3859 also supports this, and I'll get into that. But the only way that can be done is let's say the employer is paid $5,000 and the parties want to settle. And the employer says, you know what, I'm only going to consent if you give me $30,000. Right? The third party isn't going – you know, the employee is not going to do it. The third party is going to say, I'm not going to do it without the employer's consent. You need to go get that. And County of San Diego warned. It says the county's construction of section – Okay. This is 883. The county's construction of section 3859 subdivision B would to some extent attempt to restore the inequity which section 3859 in its amended form appears to be designed to remove. If an employer need not file an action against the third party until after the third party settles with the employee, the employer is again in a position to take advantage of the third party's aversion. That's talking about the employer filing an action against the third party. But what it's addressing is does the employer have the right to file an action and when it has. And here's the key. Again, under their interpretation, let's say one – they even say it expressly in the moving papers in summary judgment. They give an example. If Superior National had paid $9,000 in benefits to Deerbrook, they could have settled. They could have written a check to Deerbrook for $9,000 and a check to us for $6,000. They don't need the employer's consent. They agree that once the employer's paid money, they're limited to that. And so the only way to enforce what the legislature did in 1971 is to interpret the plain language that you can release all claims except for what has been paid at that date. So in my example, if $10,000 had been paid at that date, the employer says, look, I'm only going to agree for $30,000. What the parties can do is say, without the employer's consent, we're going to settle for whatever we would sell and we're going to save $10,000. We're going to put $10,000 aside. Sotomayor, because we're recording this. Thank you. They can say we're going to put that money aside. The lien is capped. There is certainty. The employer can continue to pursue their action, but they can only pursue it for a sum certain. And that's expressly stated in 3859 too, because here's something significant. 3859 refers to 3852, the Labor Code section 3852. Labor Code section 3852 says in the absence of a suit by an employee, the employer can sue for both money that they have paid and money they become obligated to pay in the future. That's the potential claims the employer has. Now we look at the language of 3859B, and it says such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852. Counsel, I think Judge Wofford has a question. Okay. Thank you. Yeah, okay. So help me understand this scenario. The same facts as in our case. But let's say that the Superior National, is that the name of that carrier, has not denied the claim. They just haven't paid any money yet. But everyone contemplates that it's possible money might be paid in the future. The lien is still zero. But you're really not trying to actually ask the question. I just want to understand your position. Okay. So you're saying that as of the, and so on day one we're going to settle and no money has been paid. You're saying that under your reading of 3859B, the employer's ability to recover the money that it pays in the future is limited to taking the credit under 3861 against whatever the employee, whatever the employee received? I am. And that gives them the full benefit that they would have had if they had joined in the settlement. Okay. But hang on. So let's say that the policy limits here were $100,000 instead of $15,000. And let's say that the employee were contemplating settling with the third party for only $25,000, right? Under your reading, what would happen is that the employer, and let's say that two years later the employer actually pays out $200,000 in benefits. You're saying that the employer's ability to recover against the third party tort fees has been extinguished and it's now limited to getting a credit of only $25,000, right? When in fact, at least the policy limits were far in excess of that. So why wouldn't the legislature have wanted the employer to have a say in whether that settlement should be struck? Well, because they expressly said we don't want to ever give the employer veto power. We want to, they balanced equities to allow an employee. They don't have veto. In this situation, the employee could settle if the third party insurer agrees. But they might not agree because they might know the employer's going to come after them. But that's exactly what County of San Diego says. We can't put them in a position where we're worried that the employer's going to come after them afterwards. So the only way to give them certainty is to limit it to what has been paid as of that date. Why would the legislature have wanted the insurer of the person who caused the accident to not pay the full policy limit? It makes no sense that that's what they did. Well, several things make no sense about the example. For starters, if what you're talking about, and I'm sorry, it's not a realistic example, because if what you're saying is there were such huge damages and there was $100,000 in policy, the employee's not going to settle for $25,000. But we're only ever in that position if the employer has refused to pay any benefits. We're only in the position when the workers' comp insurer, even though they're supposed to pay on day one, without any, you're supposed to just send them your bill and they're supposed to pay it, there's never any, there only occurs when there's no money paid. But 3859B maintains the employer's right under 3852 to sue for what it has paid, but it's silent on what it has become obligated to pay. Okay, counsel, we understand your position, perhaps not your argument, but your position. All right. Thank you. Thank you, Your Honors. May it please the Court, I'd like to begin by addressing what my opposing counsel has characterized as the single issue in the case and show that it's inconsistent both with the purpose of the subrogation provisions in the Labor Code, inconsistent with the California Supreme Court decision in the case of Glover, and not supported by a statutory language argument either. In the county San Diego v. Sandpax case and in the Glover case, the California Supreme Court has made clear that the subrogation provisions of the Labor Code should be interpreted in a way that protects the rights of both the employer and the employee to full recovery of their expenditures or recovery of their damages. What plaintiff is arguing is that a unilateral early settlement by an employee can cut off an employer's right to recoupment, reimbursement of later compensation expenditures that it has made. Plaintiff does not and cannot cite any case that is ever so held. And, in fact, the decision in Glover is contrary to that, the California Supreme Court's decision in Glover, which is a fact pattern which parallels this case actually quite nicely. In Glover, there was a settlement by the employee prior to any payment of benefits by the employer. It was a settlement in January 1973. A month and a half later, there was an award and the employer first paid benefits. If the rule was as my opponent suggests, then the answer in the Glover case by the Supreme Court would have been because the employee settled before any money had been paid by the employer or the compensation carrier, game over. There would be nothing left to talk about. But that's not the analysis that the California Supreme Court provided. Instead, the California Supreme Court expressly said that that settlement in that case, even though the settlement was reached before any money was paid, just like in this case, was not an appropriate segregated settlement because it did not protect the employer's rights to pursue reimbursement and, therefore, the exception to the consent requirement did not apply. That was what the California Supreme Court had to say. Likewise, in this case, because the settlement that was proposed in this case by the plaintiff's lawyers was clearly not a segregated settlement. In the January 31, 2001 letter, it said this is a settlement of all claims arising by Mr. Dora or anybody claiming through him, which would include the employer and the carrier. Clearly not a segregated settlement. Under the same timing patterns as addressed in Glover, and Glover said that a settlement like that is not exempt from the consent requirements. So why wasn't the Dora's offer to indemnify Warren sufficient to cut off the concern that your client had? Well, there's two reasons, Your Honor. One is that an offer to indemnify Warren is only an offer to indemnify Warren and not an offer to indemnify Dearbrook. Dearbrook, under the Pope case, independently would have had liability for ignoring this lien. In the Pope case, the Court said that even when consent is not required, notice to the carrier, the workers' comp carrier, is required. And if the insurance company for a tortfeasor proceeds with a settlement and doesn't provide that notice, it will be liable to the owner. Yes. Okay. In the situation where money has already been paid out and so the lien has, in effect, been, like, has actually come into existence, right? I think that's what your opponent is saying, that those cases, you're right, that if Superior National had paid out some amount of money already and had given notice of the lien and you had just basically paid all the money over to the Dora's and said, I don't care about Superior National, right, Superior National could have come against Dora for the amount of the lien that had already been perfected. But do we have cases that say where a potential lien claimant just says, hey, in the future, I might decide that I want to, I'm going to pay out some money. I'm letting you know that I'm, you know, I might have a lien in the future. Do we have cases that say that that's enough to impose liability on Dearborn? In the insurance company of North America versus TLC Lines case, that case interprets the Glover holding to be that if a tortfeasor or carrier has notice of the existence of a right or potential right of reimbursement by the carrier and ignores it, as opposed to being a good-faith settler without knowledge, then it is liable on the claim. It is not exempt from the employer's reimbursement claim directly against it. Even if no money had been paid out to sort of perfect the lien? Right. Because the lien is effective to, the lien can be established, can be given when there is a prospect of payment to ensure that the carrier has got its oar in the water, if there's ongoing litigation, for example, to make a claim against the ultimate recovery in that, because there may be payments by that carrier that haven't happened yet, but they will happen prior to either the judgment or the settlement in the case. So there's no bar against asserting a lien prior to a payment being made. And further, more to the point, or perhaps not more to the point, but additionally, the, in the case of a direct action under 3852 by the carrier against the tort phaser, that action can be initiated prior to any payment being made. That's why language of 3852 says when benefits have been paid or are obligated to be paid. Yeah, I know what you're talking about. Okay. The language of has paid, quote, has paid in 3859B that my opponent referred to, does not, the proper interpretation of the has paid language is that when the insurance, when the worker's compensation carrier is suing the tort phaser directly, even though it can file suit before it's made payments, the only money it can recover ultimately at the time of judgment is the money that it has paid prior to the judgment. What the plaintiff's statutory argument does is it injects next to those words has paid in 3859B words that aren't there. Has paid at the time of the employee's settlement. But that's, those words aren't there and it's not the proper way to read it. The has paid language in 3859B refers to has paid as of the time of the judgment in favor of the worker's comp carrier against the tort phaser. And that interpretation that I've just given you is not just my interpretation. In the Phelps versus Stostad case, I think I may have said this wrong. I think it's Phelps versus Stostad. It's in the papers. The California Supreme Court interprets the statutory scheme to limit what the employer can recover when it sues the tort phaser directly to the amounts that have been paid as of the time of the judgment. And any excess then goes to the employee. One more piece to answer your question about the offer of indemnity. An offer of indemnity by either Mr. I believe in this case it was indemnity by Mr. Doro.  What is it worth? An offer of indemnity is only as good as the credit of the person standing behind it. I don't think that matters. I mean, if your client had paid out the full policy limits, I mean, that's it, right? You don't have any further obligation to indemnify him for any losses he's incurred. I actually think the offer was a dumb one, frankly, especially given how much we know was ultimately paid out in workers' comp benefits. But I think your point, as I understand it, is that Dearbrook itself had its own independent liability to be concerned about, totally separate from its obligation to indemnify Warren, right? There are two parts to it that are similar but deserve to be separated. Okay. The first is that an insurance company must ensure that it gets full piece for its insured. Dearbrook must ensure that it buys full piece for Mr. Warren. It's got to make sure that it's settling the claims of all potential claimants against Mr. Warren, including in this case Superior National. For the reasons that have been discussed and are in the papers, accepting this settlement, an unsegregated settlement without notice and consent, notice to and consent of Superior National, would not have done that and would have left Mr. Warren exposed to claims by Superior National that ultimately reached almost $800,000. Roberts. Yeah, but he could, I mean, you, I just don't buy that because you should have at least notified him of the, what was on the table. As I understand it, you didn't even bother to consult with Warren. If I'm in Warren's shoes, I'm saying pay them the $15,000 right this second. Are you crazy? I'm going to otherwise be exposed to this judgment that's way in excess of that. Everyone knows it's not going to be, right? I need to correct a misunderstanding of the record reflected in Your Honor's question. Okay. Mr. Warren did testify that he was aware of what was going on contemporaneously with the dispute about whether the, whether the Superior National should be named on the check. This is reflected both in his own declaration, which is in the record, as well as in his deposition testimony. And he also says that he approved of what Dearbrook was doing to try to protect him against all potential claimants. So I think that's important for you to understand, Your Honor. But he agreed to the settlement, didn't he? He agreed to the $15,000 settlement, I thought, and to getting indemnified for any claims from the ---- The evidence in the record, Mr. Warren's declaration in his deposition, is that he understood that Dearbrook was saying we need to put Superior National's name on the check, and he agreed with that. Also, Your Honor, the evidence in the record is not that he was in the dark about  Dearbrook had hired an attorney, Gary Gallowa, for Mr. Warren at the time that the first lawyer for Mr. Dorough had asked for a declaration as to certain things. The information that was being given to Mr. Warren about his rights was coming from Mr. Gallowa. So even though it's true that there's testimony that the adjuster himself did not communicate directly with Warren about his rights and his options, the communication was coming from Mr. Gallowa. That's in the record, as is what I described about Mr. Warren's own declaration, Mr. Warren's father's own declaration, which is to the same effect, that they wanted Dearbrook to protect them against the potential of liability to Superior National. I would like to, with the time I have remaining, address three independent grounds for affirmance, even if the Court were ultimately to disagree with our position on the proper interpretation of the Labor Code. The first is the issue of waiver of an independent ground of the District Court's decision. The District Court, in its motion, Dearbrook argued four independent grounds for summary judgment. One was the rule in the case called Boycourt, in the case called Graciano, that when an insurance company has offered its full policy limits prior to the expiration of a deadline given by the claim, its counsel, that that establishes good faith as a matter of law. And it's independent of whether there's any mistake that subsequently happens. So even assuming arguendo, that Dearbrook's position vis-a-vis putting Superior National was a mistake of law, the fact that the company has proven through its conduct that it is not trying to save a buck on the claim, that it has put its full policy limits out there quickly, and I want to recap the facts on that. The accident happens in March 2000. Dearbrook offers its full policy limits even before there's a demand on June 6, 2000. Then there's a demand on July 6, 2000, which Dearbrook accepts on July 21, 2000, and then Dearbrook offers the money again with the Superior National caveat on June 6, 2000. What these facts establish is that even if you assume that after doing that, Dearbrook made a mistake in how it analyzed the Superior National issue, that its good faith has been established as a matter of law because it's shown that it's willing to put every penny it's got on the table to try to protect its insured. I know this isn't directly at issue, but why is this policy so low? I mean, of course they're putting every penny on the table because it's a ridiculous policy. I don't understand how we have a policy that's $15,000. In California, the statutory minimum coverage for a driver is $15,000 per person injured, $30,000 per accident. It's been that way since 1968. It made a lot more sense in 1968 than it does now, but that's still the law, partly because I suppose insurance would get a lot more expensive if people were made to carry higher limits and some people can't afford it. So the legislature has decided it's going to keep 15, 30, 15,000 per person, $30,000 per accident as the statutory minimum. So Mr. Warren was complying with his obligations under the Vehicle Code by carrying that amount of insurance. But getting back to the waiver issue. 40 seconds. Okay. So there's the waiver issue. It's an independent ground, clearly articulated as such by the court, independent of whether the Superior National issue was rightly or wrongly analyzed, ignored in the opening brief, therefore waived. There's also the issue that this area of law has been described by the courts as a thicket. It's not easy. At the time, back in 2000, there was no discussion of this 3859B issue, just this misleading half-truth about a denial. I would submit that under the circumstances here for an insurance adjuster to believe that the thing he needed to do to protect his insured, as well as his company from liability, was to put Superior National on the check is at a minimum reasonable. In fact, it falls directly within the protective umbrella of this own court's decision in Mercado v. Allstate, which says it's appropriate for the insurance company to put lien holders and potential lien holders' name on a check for just that reason. All right. Thank you, Counsel. Thank you. The case just argued is submitted for decision by the court you used all your time. The next case on calendar. The next case on calendar for argument is National Abortion Federation v. Center for Medical Progress.
judges: Rawlinson, Watford, Friedland